## MANCHEÑO *v.* LE BRUN ET AL.

APPEAL from the District Court of San Juan, Section 1.

No. 239—Decided May 29, 1908.

SALE—PROHIBITION TO ALIENATE—CONSENT OF PERSON IN WHOSE FAVOR PROHIBITION IS ESTABLISHED.—It having been stipulated in a public deed by a commercial firm and its creditors that the menbers of the firm should be prohibited from consummating any transaction whatever for account of the firm so long as one of the creditors should be engaged in collecting the amounts due him and liquidating the balance, and such prohibition· being established for his exclusive benefit, the fact that one of the members of the firm used the firm name to execute a contract of sale of the property belonging to the firm, cannot be held to render the contract null and void on the ground that he did not possess the necessary capacity to contract therefor, because the person in whose favor the prohibition was established consented thereto.

PARTNERSHIP—EXECUTION OF CONTRACTS BY ONE PARTNER AGAINST THE WISHES OF THE OTHERS.—Where a partnership firm is placed in the legal position described in the foregoing paragraph, the fact that one partner made a sale against the wishes of the other does not render the contract void.

AGENT.—A person who receives property, and upon· the same being delivered to him he is authorized to carry out any kind of transaction therewith, including the sale thereof to reimburse himself for the amounts owing to him, is not an agent.

ID.—SALE BY PRINCIPAL TO AGENT.—From the moment that the principal himself sells to his agent the property delivered to him for administration the agency ceases. He recovers the power to sell and administrate property conferred upon him, and the incapacity of the agent to acquire property from his principal is removed.

CONSIDERATION FOR CONTRACT—EXISTENCE OF ONE CONTRACT AS A CONSIDERATION
    FOR ANOTHER CONTRACT.—The existence of one contract may serve as a con-
    sideration for another contract in which the rights created by the former be-
    come transformed into other rights, the existence of previous obligations which
    become extinguished being an explanation of the new obligations.
ID.—RESCISSION OF CONTRACT.—Where a contract is rescinded by common consent,
    it is sufficient that the contract which is prior in time conferred rights upon
    one of the parties in order that its rescission may be regarded as a sufficient
    consideration for the profit or gain which the second contract recognizes in
    favor of such party.
ID.—PRESUMPTION.—Where the consideration is not stated in a contract, it must
    be presumed to exist.
ERROR AND FRAUD—NOT PRESUMED.—Error and fraud for the annullment of a
    contract are never presumed.

The facts are stated in the opinion.

*Mr. Pérez Moris* for appellant.

*Messrs. Sweet, Rossy* and *Campillo* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

Bernardino Mancheño had established in the Island of
Vieques, since the year 1894, a general commercial copartner-
ship with Santiago Paz Couñago and Eulogio Gato Blanco,
which did business under the firm name of Sucesores de L.
Sarria, the principal object thereof being the purchase and
sale of native products and of provisions. All of these part-
ners had the character of managers of the firm, and as such
had the right to sign the said firm name without distinction,
under which style they transacted all the business of the com-
pany.

On February 20, 1904, the firm of Sucesores de L. Sarria,
owing to bad business and the general critical conditions ex-
isting at the time, suspended payments before the District
Court of Humacao, but as some of the firm's creditors had
instituted proceedings against the firm in the District Court
of the United States for Porto Rico (the Federal Court)
they obtained a declaration of bankruptcy and the attachment
of the property of the firm amounting 8,899.08 *pesos,* includ-
ing a draft for 1,372.08 *pesos* in favor of the firm signed by
the defendant, Carlos Le Brun.

After this attachment and as a consequence thereof said commercial firm came to an agreement with its creditors and Mr. Le Brun, a notarial contract being entered into on April 7, 1904, before Notary Kearney.

Under this agreement the creditors mentioned therein, of San Juan, Ponce, and Vieques, consented to accept 40 per cent of their claims, which was paid in cash by Le Brun; and said firm, to compensate the aforesaid defendant and to guarantee to him the full payment of the sum which he had to disburse for the payment of the said 40 per cent, as also the expenses incurred, and in addition a mortgage credit on the real property belonging to the firm which he held against the same, assigned, abandoned and conveyed to Le Brun all its rights and actions in the merchandise, credits and other assets of the firm, making delivery thereof to him at once in order that he might dispose of them in such manner as he might deem most suitable, in the first place devoting the proceeds from the sale to the full payment of his claim, including the mortgage credit which he owns, with authority, if he deemed it necessary, totally or partially, to liquidate the commercial firm, the partners not to have any other intervention therein than that of employes of the firm; and, until Le Brun should be reimbursed, the partners were not to be permitted to do any business for account of the firm, being forbidden to do so, and after said Le Brun should have recovered his entire claim, including the mortgage credit, he was to place the partners of the firm in possession of the property remaining on said date, this deed then becoming null and void and the mortgage on the real property to be canceled, provided, as has been stated above, he should have recovered all his claims and should not have been obliged to sell at auction the said real property by virtue of his mortgage.

Fifteen days after this contract—that is to say, on April 22, 1904—Santiago Paz, one of the managing partners of the firm Sucesores de L. Sarria, executed a public deed in which he appeared for said firm and in its name, and setting forth

as antecedents the above facts and that the firm of Sucesores de L. Sarria had been called on by Le Brun to execute the deed of sale of the property which had been assigned to him by the aforementioned deed, he conveyed by actual and absolute sale to Le Brun all the stock, assets and five houses described therein for the sum mentioned in the deed of April 7—namely, 10,500 *pesos*—which he acknowledged having received and paid therewith the creditors of the firm.

Upon the death of Eulogio Gato Blanco and of his widow, Teodora Vázquez, his daughter, Lorenza Rodríguez, who is said to be his only heir, and the surviving partner, Bernardino Mancheño, setting forth the above facts and alleging that there was an evident error and ignorance on the part of partner Paz in executing the deed of sale to Le Brun, and furthermore that Le Brun had refused to restore to them their rights as he was bound to do under the agreement of April 7, 1904, that they had suffered loss and damage by reason of the nonperformance of said agreement, for having once had a fortune they have now sunk to the most abject poverty, the widow of Gato Blanco having died under the pressure of this sad situation, they file this complaint against Carlos Le Brun and against Santiago Paz, the partner who executed the deed of sale referred to, and pray for a declaration:

First. Of the nullity of the contract of assignment and sale of property made by the defendants by public deed of April 15, 1904, which is an error, the date being April 22, 1904.

Second. That the defendants have always been under the obligation to abide by the terms of the agreement of April 7, 1904.

Third. That Le Brun return immediately everything which he received by virtue thereof, or its equivalent in cash, as stated therein.

Fourth. That said Le Brun pay the plaintiffs $20,000 as damages for his noncompliance with the agreement; and

Fifth. That he also pay them an additional $10,000, to the extent of which sum they have personally suffered damages for the same reason.

In his answer to this complaint Le Brun denies the grounds of annullment alleged against the deed of assignment and sale of April 22, 1904, and denies all the damages both as to amount and derivation.

It'appears that the other defendant, Santiago Paz, acquiesced in the complaint.

The plaintiffs presented all their evidence and at this state of the proceedings counsel for Le Brun moved that the complaint be dismissed on the ground that there was not sufficient evidence to warrant a judgment against him, and after the motion had been argued by counsel for both parties judgment was rendered on November 23, 1907, which was entered on the 25th, holding that the facts and the law were in favor of such motion, and therefore dismissing the complaint of Bernardino Mancheño and Lorenzo Rodríguez, and also taxing the costs against them.

The plaintiff took an appeal from this judgment on November 30, 1907.

A statement of facts approved and signed by the trial judge has been received in this Supreme Court.

This statement, as documentary evidence of the plaintiffs, shows the deeds of agreement and sale of April 7 and 22, 1904, respectively, a memorandum of the agreement of extension of the firm of Sucesores de L. Sarria executed on April 13, 1901, by the managing partners, Paz, Mancheño and Gato Blanco, and a reference to the will of the latter of April 16, 1901.

There appears also as evidence for the plaintiffs the testimony of the witnesses, José León, Joaquín Villamil, Miguel Cuetara, Rafael Díez de Andino, Santiago Paz, Bernardino Mancheño; Carlos Le Brun, and expert Alfonso Prats.

The first-named witness testifies that the firm of Sucesores de L. Sarria had a limited credit with the firm of which the

witness was the manager, and that after the suspension of payments said firm had such credit as a bankrupt merchant might have.

The second stated that said firm had unlimited credit and that when it suspended payments the witness went to Spain.

The third spoke of unlimited credit, testifying that the managers of said commercial firm were persons of responsibility and honesty, and that after the suspension of payments they continued to be highly considered in the business community.

The fourth testified to the credit of the firm in the same terms as the previous witness, and added that it is not at all strange that the assets and liabilities of a merchant should show difference in the balances he strikes if a month or even a day elapses between them.

Santiago Paz and Bernardino Mancheño stated that the commercial firm of which they were the managers advanced funds to Le Brun for the current expenses of his estate, and was often compelled to sell articles at forced sale in order to supply him with money to pay the weekly expenses of the estate; that they became convinced that Le Brun was not disposed to comply with the agreement, because after Mancheño had made some purchases with the guarantee of the former he refused under various pretexts to deliver the key of the house to them; that the widow of Gato Blanco died as a result of the worry this had caused her; and Paz added that he had been compelled to go and live with a son-in-law on account of the position to which he had been reduced by the affairs with Le Brun; that although he signed the deed of sale to the latter he had not read the document, and that he signed it because he had been led to believe that the purpose was to carry out the agreement of April 7, 1904; that what really had been agreed was that Le Brun should take charge of the firm, although he (Paz) and the other partners were to continue taking part in the management of the business.

Carlos Le Brun, also called by the plaintiffs, said that his relations with the Sucesores de L. Sarria were confined to an account current business and had nothing to do with financing his estate; that he estimated that said firm owned him about $11,000 when it suspended payments; that the deed of sale of April 22, 1904, was a matter between Paz and Mancheño, who could not come to an agreement and decided to execute it to him; that Mancheño deceived him and did not sign it; that the latter and Paz did not take charge of the establishment because of differences between them.

Expert Alfonso Prats, for the plaintiffs, said that an examination of the commercial books of the firm of Sucesores de L. Sarria showed that when said books were closed on February 20, 1904, the firm owed 2,417.61 *pesos;* that it had credits in its favor of 2,930.61 *pesos;* that the assets amounted to $26,087.78 and the liabilities to $18,563, showing a surplus of $7,524.79, and that the real property is included in the assets of the company.

Upon being cross-examined by counsel for Le Brun, the expert testified that he could not explain how a commercial firm having assets amounting to $26,087.79 and liabilities amounting to $18,563 should shortly afterwards go into bankruptcy with assets amounting to $8,899.08 and liabilities amounting to $12,101.20.

This is all the evidence of the plaintiffs and appellants and all that was heard at the trial.

Said plaintiffs and appellants maintain in their briefs and oral arguments the following points of defense:

First. That Paz did not have the capacity to execute the deed of sale referred to, because the moment that the managing partners of the commercial firm of Sucesores de L. Sarria agreed on April 7, 1904, to cease action as such managing partners the judicial status in which they placed said firm was and is that of one in liquidation, and consequently Paz could not validly enter into new contracts and obligations, according to article 228 of the Code of Commerce;

Second. That Le Brun became an agent and in such capacity was disqualified and incapacitated from acquiring the property the administration of which had been entrusted to him by all of the managing partners of said commercial firm (section 1362 of the Civil Code) ;

Third. That the contract of purchase and sale of April 22, 1904, involves no consideration and is therefore void in accordance with the provisions of section 1242 of the Civil Code, and consequently an action to set it aside may be brought by the persons principally or subsidiarily obligated by virtue thereof (section 1269 of said Code) ;

Fourth. That the consideration is false and the statement of a false consideration in contracts renders them void, unless it be proven that they were based on another real and licit one (section 1243) ; and

Fifth. That there was deceit and error or ignorance on the part of Paz in said contract, and these are additional grounds for nullity according to sections 1232, 1233, and 1236.

The first point was properly decided by the trial judge in his opinion in holding that "although the contract of April 7, 1904, prohibited the members of the firm of Sucesores de L. Sarria to transact any business whatsoever for account of the firm until Le Brun should have collected the entire amount of all of his credits, there is no doubt, and it so appears from the contract, that this was done only for the purpose of securing him during the time he was collecting his credits or during the liquidation of the firm, and this being the case and this prohibition having been stipulated solely for his benefit and for the purpose of preventing the property out of which he could recover his credits from being sold to third persons, the fact that one of the partners had used the firm name in the contract of sale of April 22 cannot cause the nullity of such contract of sale because of lack of capacity to enter into contracts, inasmuch as the person in whose favor the prohibition had been established consented thereto."

Nor can it be maintained that the legal status of the commercial firm was that of a firm in liquidation from the date of the agreement (April 7, 1904), because although the latter authorized Le Brun to place it in liquidation, if he deemed it proper, the affirmative has not been proved, and, considering the time which elapsed (11 days), between said agreement and the contested sale, it is to be assumed that this was done.

And if the purpose of the appellant were to contest the sale made by Paz on the ground of his having made it against the express will (which is not established) of the other managing partners, the new obligation contracted would not thereby be avoided and would produce its effects without prejudice to the liability of the partner who contracted it to the common capital on account of the loss he might cause, according to article 130 of the Code of Commerce.

The second ground of objection is answered by the statement that Le Brun never was an agent and thus incapacitated to acquire the property which he did acquire because it was entrusted to him under administration. Where a person receives property and delivery thereof is made to him and he is authorized to transact any business whatsoever therewith, including its sale, to receive therefrom the credits due him, such person is not an agent.

The deed of April 7, 1904, is nothing more than a compromise or agreement with respect to the creditors of the firm of Sucesores de L. Sarria and an assignment and conveyance of rights and actions with respect to Le Brun.

Contracts do not takes the names which the interested parties capriciously wish to give them, but such as their own legal nature imposes upon them.

But let us assume *arguendi gratia* that by the deed of April 7, 1904, the Sucesores de L. Sarria constituted Le Brun their agent and that as such agent he had charge of the administration and alienation of the property he received.

This is the case where an agent is incapacitated to acquire such property by purchase, to which the second subdivision of section 1362 of the Revised Civil Code refers, which section the appellants allege to have been violated inasmuch as Le Brun purchased the property.

We have already seen that Paz, with legal capacity and on behalf of Sucesores de L. Sarria, sold such property to Le Brun by public deed of April 22, 1904, and from the moment that the principal sells such property to his agent the agency given ceases and he recovers the power to sell and administer which he had granted the legal ground for the incapacity disappearing, such incapacity consisting according to Mucius Scevola, volume 23, p. 403, in that the agent forms with the principal a "single juridical person, and if such prohibition to purchase did not exist the result would be that agents would be enabled to sell to, and purchase from, themselves the same thing, the characters of vendor and vendee in a contract of purchase and sale thus disappearing or becoming merged in each other."

So broad a scope as the one claimed cannot be given to the provision cited, and even on the assumption that an agency existed, which we deny, the violation alleged has not been committed.

Let us consider the third and fourths grounds of the contention.

The contract of purchase and sale of April 22, 1904, entered into between Paz and Le Brun has a consideration and a real consideration.

There is no doubt that the plaintiff and appellants attach legal value to the agreement entered into on April 7, 1904, to the extent of founding all of their claims thereon which they deduce precisely from its nonfulfillment.

If this be so they must admit that therein lies the existing and real consideration of the other contract of purchase and sale of April 22, 1904.

We cannot resist the temptation of quoting the words of the eminent commentator of the Civil Code, Mr. Manresa:

"The existence of a contract," he says, "may be the consideration of another in which the rights created by the former become transformed into others, the existence of the previous obligations which become extinguished being an explanation of the new obligations."

This doctrince is supported by the decision of the Supreme Court of Spain of July 13, 1899, to the effect that one contract having been rescinded by common consent under another contract, it is sufficient that the contract of prior date confer rights on one of the parties for its rescission to be sufficient consideration for the profit or gain which the second contract recognizes in favor of such party.

And at all events, even assuming that the consideration is not stated in the contract, as it really is, section 1244 provides that it is to be presumed that it exists and that it is licit, unless the debtor shall prove the contrary, and in the present case the plaintiffs and appellants have sought to prove nothing of the sort.

In the fifth ground of contention we have stated that sections 1232, 1233, and 1236 of the Revised Code, which relate to consent, are alleged to have been violated, because Paz, it is claimed, executed the entire contract of purchase and sale in error, since he stated therein that by deed of April 7, 1904, all the property was assigned to Le Brun, when what was stipulated in that deed was the payment by the latter to the creditors of 40 per cent of their claims, and the deception is said to exist in the form in which the initial and basic clauses of the contract of sale are drawn, the insidious form of which must be attributed to Le Brun, all of the advantages being in his favor and none in favor of the commercial firm which by said contract obtains no compensation.

This is not the case. Upon a perusal of the agreement of April 7 executed by all the managing partners of the firm of Sucesores de L. Sarria it will be seen that in their capacity as

such partners they assign, convey and transfer to Le Brun all their rights and actions in the merchandise, provisions, tools, implements, and credits in their favor, and other assets belonging to said firm, and they deliver all this to him absolutely in order that he may realize upon them in such manner as he might deem most advisable.

Could there have been any error on the part of Paz in making the foregoing statement, which is embodied in the contract of purchase and sale, when in the agreement which served as an antecedent for the latter the same statement was made by Paz and the other partners who, together with him, constituted the commercial firm? By no means. Therefore, it must be conceded that Paz did not act in error at the time, but voluntarily and knowingly.

We do not see in the deed any words or facts tending to show that insidious machinations were employed by Le Brun to induce Paz to enter into the contract which, but for them, would not have been executed. In a word, we do not see the serious deceit referred to in sections 1236 and 1237 of the Civil Code which would produce the nullity of the contract attacked.

The error and deceit vaguely insinuated by the appellants are in no wise deduced from the document itself, as alleged, and such grounds of nullity which vitiate consent are never presumed but must be proved, which has not even been attempted by the party on whom the burden of such proof rested, said party being the one that attacks the validity of the contract, which the adverse party maintains *in toto*. (Decision of the Supreme Court of Spain of November 30, 1896.)

Consequently, none of the alleged violations have been committed and the judgment appealed from rests, in our opinion, upon the most correct principles of justice.

And now let us come to the last point brought out in the complaint.

The damages claimed arise, according to the plaintiffs and appellants, from the nonperformance of the agreement of April 7, 1904. But as this agreement was rescinded by the will of the parties themselves by the contract of purchase and sale of April 22, 1904, which, as we have seen, is valid and effectual, it follows that no such damages are due, the origin and amount of which, besides, have not been shown.

It is not sufficient to allege in the complaint as a ground for a claim for damages that the plaintiffs have become reduced to a most abject state of poverty, living on the charity of friends, and that the widow of the partner, Gato Blanco, died because she could not survive the sad situation to which she had been reduced through the contract of purchase and sale entered into with Le Brun, because up to now it appears and the record shows with evident clearness, that the commercial firm of Sucesores de L. Sarria had been declared bankrupt on the petition of some of its creditors and that Le Brun, who, according to his statement, was also a creditor for nearly $11,000, saved them from this situation by paying the creditors 40 per cent of their claim. We cannot enter upon a consideration of intentions for the purpose of discovering ulterior motives, if there were any, but from what we have at hand we cannot affirm whether it was the conduct of Le Brun or the bankruptcy of the firm of Sucesores de L. Sarria which brought the partners, who are the plaintiffs, to the condition of suffering and sorrow to which they refer.

And we close, arriving at the conclusion that, for the reasons above stated, the judgment appealed from should be affirmed, with the costs against the appellants.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Mac-Leary and Wolf concurred.